Sealed

FILED by _____ D.C.

SEP 30 2014

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. of FLA. - MIAMI

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION,<br><br>    Plaintiff,<br><br>v.<br><br>FOREX MONTHLY INCOME FUND, LLC, JEAN CHAUVEL, RENAUD PIERRE-CHARLES, and ROBERT TRIPODE,<br><br>    Defendants. | CIVIL ACTION NO. **14-62240**<br><br>Complaint for Injunctive and Other Equitable Relief, Restitution and Civil Monetary Penalties Under the Commodity Exchange Act<br><br>**CIV - DIMITROULEAS**<br><br>**MAGISTRATE JUDGE SNOW** |

Plaintiff, U.S. Commodity Futures Trading Commission ("Commission"), by its attorneys, alleges as follows:

## I. SUMMARY

1. From as early as January 2011 through the present ("Relevant Period"), Jean Chauvel ("Chauvel") and Renaud Pierre-Charles ("Pierre-Charles"), individually and as principals of Forex Monthly Income Fund, LLC ("FMIF"), and Robert Tripode ("Tripode"), individually and as an agent of FMIF, (collectively, "Defendants"), defrauded more than 100 members of the public ("pool participants") of more than $1.4 million in connection with pooled investments in retail off-exchange foreign currency contracts ("forex").

2. In order to invest, pool participants were instructed to make their checks payable to FMIF, the commodity pool operator ("CPO"), and these checks were deposited into bank accounts in FMIF's name. In opening these bank accounts and accepting funds from pool participants, FMIF made no distinction between the purported FMIF pool and FMIF as the CPO

3.  To entice members of the public to participate in the purported FMIF pool, Defendants guaranteed pool participants a monthly return on their investment based on profits purportedly earned from forex trading.

4.  In reality, FMIF never traded or generated any income from trading forex. Rather, of the approximately $1.4 million provided by pool participants to Defendants for forex trading during the Relevant Period, more than $1 million was misappropriated by Defendants.

5.  To perpetuate their fraud, Defendants prepared and distributed to pool participants a "Schedule of Monthly Returns" that falsely represented the guaranteed monthly payments each pool participant would receive based on the size of the pool participant's investment and FMIF's purported successful forex trading.

6.  By virtue of this conduct and the conduct further described herein, Defendants have engaged, are engaging, or are about to engage in acts and practices in violation of the Commodity Exchange Act (the "Act"), 7 U.S.C. §§ 1 et seq. (2012), and Commission Regulations ("Regulations"), 17 C.F.R. §§ 1.1 et seq. (2014), specifically Sections 4b(a)(2)(A)-(C), 4k(2), 4m(1), and 4o(1) of the Act, 7 U.S.C. §§ 6b(a)(2)(A)-(C), 6k(2), 6m(1), and 6o(1) (2012), and Regulations 3.12, 4.20, 4.41(a), 5.2(b), 5.3(a)(2)(i) and (ii), 17 C.F.R. §§ 3.12, 4.20, 4.41(a), 5.2(b), 5.3(a)(2)(i) and (ii) (2014).

7.  The acts and omissions of Chauvel, Pierre-Charles, and Tripode occurred within the course and scope of their employment, agency, and/or office with FMIF. Therefore, FMIF is liable for these acts and omissions under Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012), and Regulation 1.2, 17 C.F.R. § 1.2 (2014).

8.  Chauvel and Pierre-Charles controlled FMIF, directly or indirectly, throughout the Relevant Period and did not act in good faith or knowingly induced FMIF's violations of the

Act and Regulations. Therefore, Chavuel and Pierre-Charles are liable for FMIF's violations pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2012).

9. Accordingly, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), the Commission brings this action to enjoin Defendants' unlawful acts and practices and to compel their compliance with the Act and Regulations and to further enjoin them from engaging in any commodity-related activity. In addition, the Commission seeks restitution, civil monetary penalties, and remedial ancillary relief, including but not limited to, trading and registration bans, disgorgement, rescission, pre- and post-judgment interest, and such other relief as the Court may deem necessary and appropriate.

10. Unless restrained and enjoined by this Court, Defendants likely will continue to engage in the acts and practices alleged in this Complaint and similar acts and practices, as more fully described below.

## II. JURISDICTION AND VENUE

11. Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a) (2012), authorizes the Commission to seek injunctive and other relief against any person whenever it shall appear to the Commission that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.

12. The Court has jurisdiction over the conduct and transactions at issue in this case pursuant to Sections 2(c)(2) and 6c of the Act, 7 U.S.C. §§ 2(c)(2) and 13a-1 (2012).

13. Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2012), because Defendants FMIF, Chauvel, and Tripode reside and transact business in this District, Pierre-Charles resided and transacted business in this District until recently, several victims of Defendants' fraud reside in this District, and certain transactions, acts,

practices, and courses of business alleged in this Complaint occurred, are occurring, or are about to occur within this District.

### III. PARTIES

14. Plaintiff **U.S. Commodity Futures Trading Commission** is an independent federal regulatory agency charged by Congress with the administration and enforcement of the Act, 7 U.S.C. §§ 1 *et seq.* (2012), and the Regulations promulgated thereunder, 17 C.F.R. §§ 1.1 *et seq.* (2012).

15. Defendant **Forex Monthly Income Fund, LLC** is a Florida limited liability company created by Chauvel and Pierre-Charles on January 31, 2011 with a business address of 8362 Pines Blvd, No. 314, Pembroke Pines, FL 33024. FMIF has never been registered with the Commission in any capacity. On September 27, 2013, FMIF was administratively dissolved by the State of Florida for failing to file an annual report.

16. Defendant **Jean Chauvel** is an individual residing in Sunny Isles Beach, Florida. Chauvel is a principal, officer, and manager of FMIF and is responsible for its acts. Chauvel has never been registered with the Commission in any capacity.

17. Defendant **Renaud Pierre-Charles** is an individual residing in Miami, Florida. Pierre-Charles is a principal, officer, and manager of FMIF and is responsible for its acts. Pierre-Charles has never been registered with the Commission in any capacity.

18. Defendant **Robert Tripode** is an individual residing in Boynton Beach, Florida. Tripode is an employee and agent of FMIF. Tripode has never been registered with the Commission in any capacity.

## IV.  FACTS

19.    During the Relevant Period, FMIF, by and through Chauvel, Pierre-Charles, and Tripode, solicited existing and prospective pool participants, by use of the mails and/or other means or instrumentalities of interstate commerce, to send money to FMIF to trade forex in a commodity pool operated by FMIF. Some of the pool participants solicited were unsophisticated investors, including senior citizens, who sought higher monthly income on their retirement savings.

20.    As part of their solicitation, Defendants represented to prospective pool participants that FMIF offered a safe investment with steady, guaranteed returns. Defendants reinforced this belief by providing pool participants a "Schedule of Monthly Returns" stating the exact amount of each monthly payment the pool participants were to receive based on the size of their investments.

21.    Tripode communicated with existing pool participants and directed at least some pool participants to sign a "Foreign Currency Fund Membership Agreement" (hereinafter, "Agreement"). The Agreement reiterated the guaranteed monthly returns and also provided that either party could terminate the Agreement and that funds would be refunded upon 60 days written notice. The Agreements were countersigned by Tripode, who was identified as "FIMF (sic) Authorized Agent."

22.    In addition to personally soliciting prospective and existing pool participants, Defendants solicited pool participants through a website, *www.forexmonthlyincomefund.com*, in which FMIF was described as the "world's leading and most trusted online investment opportunity" and "an international investment company which has been efficiently operating in the Forex market since 2010." The website also repeated Defendants' guarantees: "FMIF

provides its clients with a fixed monthly income at a predetermined rate, with return of your initial deposit with a [sic] 60 days written notice."

23. FMIF's website offered pool participants four separate "plans" under which they could participate in the FMIF pool. These plans touted monthly returns on investment from two to three percent and annual returns from 30 to 50 percent.

24. FMIF's website also offered an "Affiliate/Referral Program" under which pool participants and non-participants alike could receive guaranteed payments for referring new pool participants to the FMIF pool.

25. Defendants' representations, as described above, prompted at least 100 pool participants to provide Defendants approximately $1.429 million for trading forex in the purported FMIF pool.

26. During the Relevant Period, Pierre-Charles and Chauvel opened bank accounts in the name of "Forex Monthly Income Fund" at J.P. Morgan Chase, N.A. ("Morgan Chase") and Bank of America, N.A. ("BofA"). Pierre-Charles and Chauvel had sole signatory authority over these bank accounts.

27. In order to invest, pool participants were instructed to make their checks payable to FMIF. Upon information and belief, these checks were deposited by Chauvel and Pierre-Charles into the Morgan Chase or BofA bank accounts.

28. In opening these bank accounts and accepting funds from pool participants, Chauvel and Pierre-Charles made no distinction between the purported FMIF pool and FMIF as the CPO.

29.     During the Relevant Period, Defendants did not open any domestic forex trading accounts. Upon information and belief, Defendants did not open any foreign forex trading accounts.

30.     As early as summer 2012, FMIF was losing its ability to keep up with the promised monthly payments to pool participants. In a July 2012 letter sent to FMIF pool participants, Chauvel and Pierre-Charles, identified as the CFO and CEO of FMIF, respectively, wrote that the pool participants' "percentages [i.e., the promised returns on investment] are temporarily adjusted down due to market conditions…but we expect the situation to back [sic] to normal within the next 60-90 days."

31.     By early 2013, new deposits from pool participants ceased flowing into FMIF. Within weeks of receiving the last deposit, Defendants ceased making regular monthly payments to pool participants. At least as early as fall 2013, some pool participants demanded that FMIF return their principal payments. Some or all of these demands were not honored by Defendants, despite the guarantee of withdrawal upon 60 days written notice.

32.     In response to one pool participant's efforts to work together with other pool participants to withdraw their funds, Tripode told the pool participant, among other things, that it was not "right [for] you contacting [sic] my clients," "your [sic] killing me i make a living off these people," and "your [sic]opening a can of worm [sic]."

33.     In reality, Defendants' purported forex pool was a sham. Defendants knowingly and willfully made, or caused others to make, multiple material misrepresentations and omissions in their solicitation of existing and prospective pool participants, including as described above. In making their investment decisions, existing and prospective pool participants in the FMIF pool relied on Defendants' material misrepresentations and omissions,

including statements regarding FMIF's trading activity, purported profits earned from that trading, and the manner in which pool participants' funds would be used.

34.     Instead of trading forex and paying the promised returns, Defendants misappropriated the vast majority of pool participants' funds. Of the $1.429 million received from pool participants, Defendants returned only approximately $388,000 in the form of purported monthly profits from forex trading and withdrawals of principal. The remaining approximately $1,041,000 was misappropriated by Defendants, including a total of approximately $558,000 transferred directly to Chauvel, Pierre-Charles, and Tripode in the form of cash, checks, and wire transfers. Many of these remaining funds were used by Defendants to pay for personal and business expenses and to pay unidentified third parties.

35.     In order to conceal and perpetuate their fraud, Defendants distributed false statements to existing and prospective pool participants through the mails and/or other means or instrumentalities of interstate commerce that indicated Defendants were engaged in profitable trading when, in fact, they conducted no trading at all for the FMIF pool.

### V. VIOLATIONS OF THE COMMODITY EXCHANGE ACT AND COMMISSION REGULATIONS

#### COUNT I

#### FRAUD IN CONNECTION WITH FOREX
#### Violations of 7 U.S.C. §§ 6b(a)(2)(A)-(C) and 17 C.F.R. § 5.2(b)

36.     Paragraphs 1 through 35 are re-alleged and incorporated herein by reference.

37.     Sections 4b(a)(2)(A)-(C) of the Act, 7 U.S.C. §§ 6b(a)(2)(A)-(C) (2012), make it unlawful for any person, in or in connection with any order to make or the making of any contract of sale of any commodity for future delivery that is made, or to be made, for or on

behalf of, or with, any other person, other than on or subject to the rules of a designated contract market

> (A) to cheat or defraud or attempt to cheat or defraud the other person; (B) willfully to make or cause to be made to the other person any false report or statement or willfully to enter or cause to be entered for the other person any false record; or (C) willfully to deceive or attempt to deceive the other person by any means whatsoever…

38. Regulation 5.2(b), 17 C.F.R. § 5.2(b) (2014), makes it unlawful

> for any person, by use of the mails or by any means or instrumentality of interstate commerce, directly or indirectly, in or in connection with any retail forex transaction (1) to cheat or defraud or attempt to cheat or defraud any person; (2) willfully to make or cause to be made to any person any false report or statement or cause to be entered for any person any false record; or (3) willfully to deceive or attempt to deceive any person by any means whatsoever.

39. During the Relevant Period, Defendants violated Sections 4b(a)(2)(A)-(C) of the Act, 7 U.S.C. § 6b(a)(2)(A)-(C) (2012), and Regulation 5.2(b), 17 C.F.R. § 5.2(b) (2014), in or in connection with an order to make or the making of forex contracts for or on behalf of other persons, by, among other things: (i) misappropriating pool participants' funds; (ii) making material fraudulent statements and omissions to existing and prospective pool participants about FMIF's forex trading and profitability; and (iii) issuing false account reports to existing and prospective pool participants.

40. Defendants engaged in the acts and practices described above willfully, knowingly or with reckless disregard for the truth.

41. The foregoing acts and omissions of Chauvel, Pierre-Charles, and Tripode occurred within the course and scope of their employment, office, and/or agency with FMIF. Therefore, FMIF is liable for these acts and omissions pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012), and Regulation 1.2, 17 C.F.R. § 1.2 (2014).

42. Chauvel and Pierre-Charles controlled FMIF, directly or indirectly, throughout the Relevant Period and did not act in good faith or knowingly induced, directly or indirectly, FMIF's violations of Sections 4b(a)(1)(A)-(C) of the Act, 7 U.S.C. § 6b(a)(1)(A)-(C) (2012), and Regulation 5.2(b), 17 C.F.R. § 5.2(b) (2014). Therefore, Chauvel and Pierre-Charles are liable for FMIF's violations pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2012).

43. Each act of misappropriation, misrepresentation or omission of material fact, and issuance of a false report, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Sections 4b(a)(2)(A)-(C) of the Act, 7 U.S.C. §§ 6b(a)(2)(A)-(C) (2012), and Regulation 5.2(b), 17 C.F.R. § 5.2(b) (2014).

## COUNT II

### FRAUD BY A COMMODITY POOL OPERATOR
### Violations of 7 U.S.C. § 6o(1) and 17 C.F.R. §§ 4.41(a)

44. Paragraphs 1 through 43 are re-alleged and incorporated herein by reference.

45. Section 4o(1) of the Act, 7 U.S.C. § 6o(1) (2012), makes it unlawful

> for a ... commodity pool operator, or associated person of a commodity pool operator by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly—
>
> (A) to employ any device, scheme, or artifice to defraud any client or participant or prospective client or participant; or
>
> (B) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant.

46. Regulation 4.41(a), 17 C.F.R. § 4.41(a) (2014), makes it unlawful for any commodity pool operator or any principal thereof to publish, distribute, or broadcast, whether by electronic media or otherwise, any report, letter, writing, or other literature which:

> (1) Employs any device, scheme or artifice to defraud any participant or client or prospective participant or client; [or]

> (2) Involves any transaction, practice or course of business which operates as a fraud or deceit upon any participant or client or any prospective participant or client.

47. Section 1a(11), 7 U.S.C. § 1a(11) (2012), defines a "commodity pool operator," in relevant part, as a person

> engaged in a business that is of the nature of a commodity pool, investment trust, syndicate, or similar form of enterprise, and who, in connection therewith, solicits, accepts, or receives from others, funds, securities, or property, either directly or through capital contributions, the sale of stock or other forms of securities, or otherwise, for the purpose of trading in commodity interests, including any—
>
> > II. [forex] agreement, contract, or transaction...

48. From at least July 16, 2011[1] to the present, FMIF operated as a commodity pool operator in that it engaged in a business that is of the nature of an investment trust, syndicate or similar form of enterprise, and in connection therewith, solicited, accepted, or received funds, securities, or property from others for the purpose of trading forex.

49. From at least July 16, 2011 to the present, Chauvel, Pierre-Charles, and Tripode were principals and/or agents of FMIF and acted as associated persons of FMIF in that they solicited and accepted funds, securities, or property for FMIF.

50. From at least July 16, 2011 to the present, FMIF (acting as a commodity pool operator) and Chauvel, Pierre-Charles, and Tripode (acting as associated persons of FMIF), through the use of the mails or other means or instrumentalities of interstate commerce (including through the use of telephone calls and electronic mail with pool participants and

---

[1] As of July 16, 2011, the statutory definition of a commodity pool operator set forth in Section 1a(11) of the Act was amended by the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub.L. 111–203, 124 Stat. 1376, (July 21, 2010), to include commodity pool operators operating commodity pools that solicit and accept funds for the purpose of trading forex, in addition to other commodity interests.

prospective pool participants), violated Section 4o(1) of the Act, 7 U.S.C. § 6o(1) (2012), by (i) misappropriating pool participants' funds, (ii) making material fraudulent statements and omissions to existing and prospective pool participants about FMIF's forex trading and profitability, including statements published through FMIF's website, and (iii) issuing false account reports to existing and prospective pool participants.

51.  From at least July 16, 2011 to the present, FMIF (acting as a commodity pool operator) and Chauvel and Pierre-Charles (acting as principals of FMIF) violated Regulations 4.41(a), 17 C.F.R. § 4.41(a) (2014) by (i) misappropriating pool participants' funds, (ii) making material fraudulent statements and omissions to existing and prospective pool participants about FMIF's forex trading and profitability, including statements published through FMIF's website, and (iii) issuing false account reports to existing and prospective pool participants.

52.  Defendants engaged in the acts and practices described in this count knowingly, willfully, or with reckless disregard for the truth.

53.  The foregoing acts and omissions of Chauvel, Pierre-Charles, and Tripode occurred within the course and scope of their employment, office, and/or agency with FMIF. Therefore, FMIF is liable for these acts and omissions pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012), and Regulation 1.2, 17 C.F.R. § 1.2 (2014).

54.  Chauvel and Pierre-Charles controlled FMIF, directly or indirectly, throughout the Relevant Period and did not act in good faith or knowingly induced, directly or indirectly, FMIF's violations of Section 4o(1) of the Act, 7 U.S.C. § 6o(1) (2012), and Regulations 4.41(a), 17 C.F.R. §§ 4.41(a) (2014). Therefore, Chauvel and Pierre-Charles are liable for FMIF's violations pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2012).

55.  Each act of misappropriation, misrepresentation or omission of material fact, and

issuance of a false statement, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Section 4o(1) of the Act, 7 U.S.C. § 6o(1) (2012), and Regulation 4.41(a), 17 C.F.R. § 4.41(a) (2014).

## COUNT III

### FAILURE TO REGISTER AS A COMMODITY POOL OPERATOR
### Violation of 7 U.S.C § 6m(1) and 17 C.F.R. § 5.3(a)(2)(i)

56. Paragraphs 1 through 55 are re-alleged and incorporated herein by reference.

57. Section 4m(1) of the Act, 7 U.S.C § 6m(1) (2012), provides that it is unlawful for any commodity pool operator, unless registered, to make use of the mails or any means or instrumentality of interstate commerce in connection with its business as a commodity pool operator.

58. Similarly, Regulation 5.3(a)(2)(i), 17 C.F.R. § 5.3(a)(2)(i) (2014), provides that any commodity pool operator, as defined in Regulation 5.1(d)(1), is required to register as a commodity pool operator. Regulation 5.1(d)(1), 17 C.F.R. § 5.1(d)(1) (2014), defines a commodity pool operator as anyone who "operates or solicits funds... for a pooled investment vehicle... that engages in retail forex transactions."

59. As set forth above, from July 16, 2011 to the present, FMIF, by and through its employees, agents, and control persons, including Chauvel, Pierre-Charles, and Tripode, used the mails or instrumentalities of interstate commerce in or in connection with a commodity pool as a commodity pool operator while failing to register as a commodity pool operator, in violation of Section 4m(1) of the Act, 7 U.S.C. § 6m(1) (2012).

60. As set forth above, during the Relevant Period, FMIF, by and through its employees, agents, and control persons, including Chauvel, Pierre-Charles, and Tripode, solicited funds for a pooled investment vehicle that engaged in retail forex transactions while

failing to register as a commodity pool operator, in violation of Regulation 5.3(a)(2)(i), 17 C.F.R. § 5.3(a)(2)(i) (2014).

61. During the Relevant Period, Chauvel and Pierre-Charles controlled FMIF, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, FMIF's conduct alleged in this count. Therefore, Chauvel and Pierre-Charles are liable for FMIF's violations of Section 4m(1) of the Act, 7 U.S.C. § 6m(1) (2012), and Regulation 5.3(a)(2)(i), 17 C.F.R. § 5.3(a)(2)(i) (2014), pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2012).

62. Each use of the mails or any means or instrumentality of interstate commerce by FMIF, by and through its employees, agents and control persons, while acting as a commodity pool operator, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Section 4m(1) of the Act, 7 U.S.C. § 6m(1) (2012), and Regulation 5.3(a)(2)(i), 17 C.F.R. § 5.3(a)(2)(i) (2014).

## COUNT IV

### FAILURE TO REGISTER AS ASSOCIATED PERSONS
### Violation of 7 U.S.C. § 6k(2) and 17 C.F.R. §§ 3.12 and 5.3(a)(2)(ii)

63. The allegations set forth in paragraphs 1 through 62 are re-alleged and incorporated herein by reference.

64. Section 4k(2) of the Act, 7 U.S.C. § 6k(2) (2012), and Regulation 5.3(a)(2)(ii), 17 C.F.R. § 5.3(a)(2)(ii) (2014), prohibit persons from being associated with a commodity pool operator as a partner, officer, employee, consultant, or agent (or any person occupying a similar status or performing similar functions), in any capacity that involves (i) the solicitation of funds, securities, or property for participation in a commodity pool, or (ii) the supervision of any person or persons so engaged, unless such person is registered.

65. Section 4k(2)(ii) of the Act, 7 U.S.C. § 6k(2)(ii) (2012), further prohibits commodity pool operators from permitting such persons to become or remain associated with the commodity pool operator if the commodity pool operator knew or should have known that such persons were not so registered.

66. Regulation 3.12, 17 C.F.R. § 3.12 (2014), prohibits a person from being associated with a commodity pool operator unless the person is registered as an associated person of the sponsoring commodity pool operator.

67. As set forth above, from July 16, 2011 to the present, Chauvel, Pierre-Charles, and Tripode solicited funds for participation in a commodity pool operated by FMIF and/or supervised persons so engaged. Because Chauvel, Pierre-Charles, and Tripode were not registered as associated persons of FMIF, Chauvel, Pierre-Charles, and Tripode violated Section 4k(2) of the Act, 7 U.S.C. § 6k(2) (2012), and Regulations 3.12 and 5.3(a)(2)(ii), 17 C.F.R. §§ 3.12 and 5.3(a)(2)(ii) (2014).

68. As set forth above, FMIF, by and through its employees, agents, and control persons, permitted Chauvel, Pierre-Charles, and Tripode to become or remain associated with FMIF knowing that they were not registered as associated persons, in violation of Section 4k(2)(ii) of the Act, 7 U.S.C. § 6k(2)(ii) (2012).

## COUNT V

### PROHIBITED ACTIVITES OF A COMMODITY POOL OPERATOR
### Violations of 17 C.F.R. §§ 4.20(a) and (b)

69. The allegations set forth in paragraphs 1 through 68 are re-alleged and incorporated herein by reference.

70. Regulation 4.20(a), 17 C.F.R. § 4.20(a) (2014), provides that a commodity pool operator "must operate its pool as an entity cognizable as a legal entity separate from that of the

pool operator." Regulation 4.20(b), 17 C.F.R. § 4.20(b) (2014), provides that all funds received by a commodity pool operator from a pool participant must be accepted in the name of the pool, and the commodity pool operator may not accept funds in its own name.

71.     During the Relevant Period, FMIF violated Regulations 4.20(a) and (b), 17 C.F.R. §§ 4.20(a) and (b) (2014), by *inter alia* (i) failing to operate the FMIF pool as a legal entity separate from FMIF, the commodity pool operator; and (ii) receiving pool participant funds in its own name, rather than in the name of a pool.

72.     During the Relevant Period, Chauvel and Pierre-Charles controlled FMIF, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, FMIF's conduct alleged in this count. Therefore, Chauvel and Pierre-Charles are liable for FMIF's violations of Regulations 4.20(a) and (b), 17 C.F.R. §§ 4.20(a) and (b) (2014), pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2012).

73.     Each instance of FMIF failing to operate the FMIF pool as an entity separate and apart from FMIF and accepting funds its own name, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Regulations 4.20(a) and (b),17 C.F.R. §§ 4.20(a) and (b) (2014).

## VI.     RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), and pursuant to its own equitable powers, enter:

A.      An order finding Defendants liable for violating Sections 4b(a)(2)(A)-(C), 4k(2), 4m(1), and 4o(1), 7 U.S.C. §§ 6b(a)(2)(A)-(C), 6k(2), 6m(1), and 6o(1) (2012) of the Act, and Regulations 3.12, 4.20, 4.41(a), 5.2(b), 5.3(a)(2)(i) and (ii), 17 C.F.R. §§ 3.12, 4.20(a) and (b), 4.41(a), 5.2(b), 5.3(a)(2)(i) and (ii) (2014);

B.     An order of permanent injunction prohibiting Defendants, and any other person or entity associated with them, from engaging in conduct that violates Sections 4b(a)(2)(A)-(C), 4k(2), 4m(1), and 4o(1) of the Act, 7 U.S.C. §§ 6b(a)(2)(A)-(C), 6k(2), 6m(1), and 6o(1) (2012), and Regulations 3.12, 4.20, 4.41(a), 5.2(b), and 5.3(a)(2)(i) and (ii), 17 C.F.R. §§ 3.12, 4.20(a) and (b), 4.41(a), 5.2(b), 5.3(a)(2)(i) and (ii) (2014);

C.     An order of permanent injunction prohibiting Defendants, and any of their agents, servants, employees, assigns, attorneys, and persons in active concert or participation, including any successor thereof from, directly or indirectly:

     1.     Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(29) of the Act, 7 U.S.C. § 1a(29) (2012));

     2.     Entering into any transactions involving commodity futures, options on commodity futures, commodity options (as that term is defined in Regulation 1.3(hh), 17 C.F.R. § 1.3(hh) (2014) (commodity options), swaps (as that term is defined in Section 1a(47) of the Act, 7 U.S.C. § 1a(47) (2012), and as further defined by Regulation 1.3, 17 C.F.R. § 1.3 (2014)), security futures products, and/or foreign currency (as described in Sections 2(c)(2)(B) and 2(c)(2)(C)(i) of the Act, 7 U.S.C. §§ 2(c)(2)(B) and 2(c)(2)(C)(i) (2012) (forex contracts)) for their own personal or proprietary account or for any account in which they have a direct or indirect interest;

3. Having any commodity futures, swaps, options on commodity futures, commodity options, security futures products, and/or forex contracts traded on their behalf;

4. Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, swaps, options on commodity futures, commodity options, security futures products, and/or forex contracts;

5. Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity futures, swaps, options on commodity futures, commodity options, security futures products, forex contracts, and/or retail commodity transactions;

6. Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2014);

7. Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2012)), agent, or any other officer or employee of any person registered, exempted from registration, or required to be registered with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2012); and

8. Engaging in any business activities related to commodity futures, options on commodity futures, commodity options, swaps, security futures products, and/or forex contracts.

D. An order directing Defendants, as well as any successors thereof, to disgorge, pursuant to such procedure as the Court may order, all benefits received from the acts or practices which constitute violations of the Act and the Regulations, as described herein, and pre- and post-judgment interest thereon from the date of such violations;

E. An order directing Defendants, as well as any successors thereof, to make full restitution, pursuant to such procedure as the Court may order, to every customer whose funds they received or caused another person or entity to receive as a result of acts and practices which constitute violations of the Act and the Regulations, as described herein, and pre- and post-judgment interest from the date of such violations;

F. An order directing Defendants, as well as any successors thereof, to rescind, pursuant to such procedures as the Court may order, all contracts and agreements, whether implied or express, entered into between them and any of the customers whose funds were received by them as a result of the acts and practices which constituted violations of the Act and the Regulations as described herein;

G. An order directing Defendants and any successors thereof to pay civil monetary penalties under the Act, to be assessed by the Court, in amounts of not more than the higher of: (1) triple the monetary gain to Defendants for each violation of the Act and/or Regulations; or (2) $140,000 for each violation committed, plus post-judgment interest;

H. An order directing Defendants and any successors thereof to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2412(a)(2) (2012); and

  I.  Such other and further relief as the Court deems proper.

Dated: 9/30/2014     Respectfully submitted,

            PLAINTIFF U.S. COMMODITY FUTURES
            TRADING COMMISSION

            Kim G. Bruno
            Senior Trial Attorney
            (DC Bar No. 389899)
            *kbruno@cftc.gov*

            Daniel C. Jordan
            Chief Trial Attorney
            (VA Bar No. 36382)
            *djordan@cftc.gov*

            U.S. Commodity Futures Trading Commission
            Division of Enforcement
            1155 21st Street, NW,
            Washington, D.C. 20581
            Telephone: (202) 418-5000
            Fax: (202) 418-5124

            Attorneys for Plaintiff